# United States Court of Appeals
## For the First Circuit

No. 25-1041

UNITED STATES OF AMERICA,

Appellant,

v.

MIGUEL GONZÁLEZ-AROCHO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]
[Hon. Marcos E. López, U.S. Magistrate Judge]

Before

Gelpí, Thompson, and Rikelman,
Circuit Judges.

Eric Feigin, with whom W. Stephen Muldrow, United States
Attorney, Juan Carlos Reyes-Ramos, Assistant United States
Attorney, and Claire Groden, Attorney, United States Department of
Justice, were on brief, for appellant.
Celso Javier Pérez Carballo, Assistant Federal Public
Defender, with whom Rachel Brill, Federal Public Defender, and
Franco L. Pérez-Redondo, Assistant Federal Public Defender, were
on brief, for appellee.

July 9, 2026

**RIKELMAN, <u>Circuit Judge</u>**. We must decide whether the good faith exception to the exclusionary rule applies when federal agents executing a search warrant knowingly seize and search an iPhone that is different from the device specified in the warrant. After an evidentiary hearing, the district court concluded that the government had not met its burden of justifying the application of the good faith exception on the record here and thus suppressed the evidence discovered during the search. We agree and affirm.

## I. BACKGROUND

### A. Relevant Facts

In October 2021, Homeland Security Investigations (HSI) agents in Puerto Rico received notice that participants in an online chatroom had illegally exchanged child pornography. An investigation revealed that one of the participants used a local phone number ending in -7611. The agents then served a summons on T-Mobile, the service carrier for the phone number. In response to the summons, T-Mobile identified Miguel González-Arocho ("González") as the registered user and indicated that the phone number was assigned to a gray Apple iPhone 6s 64GB, with a unique International Mobile Equipment Identity (IMEI) number ending in -1711.[1]

---

[1] Electronic devices such as cell phones and tablets each have a unique 15-digit IMEI number that enables carriers and law enforcement to identify the device and track it. <u>See</u> <u>What Is An</u>

- 3 -

Based on the available information, HSI Task Force Agent Albert Villanueva applied for a search warrant. In his attached affidavit, he described his extensive experience in "investigat[ing] criminal violations relating to child exploitation and child pornography," including "online child exploitation and various electronic crimes." He also explained his familiarity with the security features on Apple devices and the general use of cell phones to store and distribute child pornography. Given his almost ten years with HSI, his wealth of experience and training, and the findings from the chatroom investigation, he stated that he had "probable cause to believe that evidence of [child pornography] . . . [was] located in the Apple iPhone 6S 64GB cellular phone" described in the T-Mobile summons.

A magistrate judge issued a search warrant for González's phone in May 2022. The warrant stated:

> The property to be searched is Apple iPhone 6S 64GB IMEI: [***********]1711 with number [******]7611 (the DEVICE), belonging to or being used by Miguel GONZALEZ-Arocho.[2] This warrant authorizes the search and seizure and forensic examination of the Device and authorizes the search of the person, named and

---

IMEI Number & How Can I Find Mine?, T-Mobile USA, Inc. (Sep. 23, 2025), https://www.t-mobile.com/dialed-in/wireless/what-is-an-imei-number? [https://perma.cc/G5F4-TNSL].

[2] We omit the full phone number and IMEI listed in the warrant for privacy reasons.

- 4 -

depicted in the photo below, to search for the DEVICE.[3]

One week later, HSI agents executed the warrant, intercepting González outside of his home. Villanueva and his partner, Agent Alek Pacheco, seized the phone in González's possession -- an iPhone 13 Pro Max (the "iPhone 13") -- and escorted him to the back of their car.

After detaining González, the agents immediately began conversing with him in Spanish.[4] To start, they explained that they had a search warrant "for an Apple iPhone" with González's phone number. They did not, however, specify the iPhone model listed in the warrant. The agents next handed González a <u>Miranda</u> form, written in Spanish, and confirmed that he could read and write. Then, without asking González whether he understood or could read English, the agents gave him an English-language copy of the search warrant.[5] They restated that the warrant authorized their search of "the cellular," but again omitted the specific iPhone model described in the warrant.

---

[3] We refer to the "DEVICE" defined and described in the warrant as the "iPhone 6s."

[4] The agents filmed González's entire interview, and the district court entered the video recording as evidence during the motion to suppress hearing. We draw heavily from the recording, and the accompanying English-translated transcript, in recounting the agents' interaction with González.

[5] At oral argument, González represented that he is not fluent in English and had availed himself of a court interpreter at his hearings before the district court.

The agents then proceeded to explain the purpose of their investigation and asked González about his participation in an online chatroom in which child pornography had been shared. González provided the agents with the passcode to the iPhone 13, but only after they inquired if his phone had a passcode. The agents promptly began searching the phone; they found that the chatroom application of interest was "downloaded" but "empty" and thus would require "forensic [to] see what they can pull."

Eventually, González asked whether he would continue to "have a telephone" after the interview concluded, and the agents informed him that they were "going to seize" the iPhone 13 for further examination. In the meantime, however, they offered to write down for his reference any contact information stored in the device. Over the course of their approximately 50-minute interaction with González, the agents did not mention or ask him about the iPhone 6s.

That same day, Villanueva completed and signed an inventory form documenting that the agents had seized an "Apple i[P]hone 13 with" the -7611 phone number. He then delivered the phone to the forensics team, which found over 100 files of child pornography on it.

## B. Procedural History

A grand jury indicted González in September 2022 for knowingly possessing and receiving child-exploitation material, in

violation of 18 U.S.C. § 2252(a)(4)(B) and (a)(2). He was arrested one week later.

González moved to suppress the evidence discovered on the iPhone 13. He argued that the warrant did not authorize the search of that device but instead permitted the agents to search only the iPhone 6s with the -1711 IMEI number. Thus, he maintained, the agents had violated his Fourth Amendment rights, requiring suppression of all evidence obtained during the search.

The government opposed the motion, asserting that González consented to the search. The government also argued that even if González's consent was not voluntary, the warrant covered the iPhone 13, and in any event, the agents acted in good faith.

The magistrate judge held a suppression hearing, which featured live testimony by Villanueva. Villanueva explained that he had received formal training on "technical areas of . . . electronic devices" and also had learned about various types of cell phones, including iPhones, through "on-the-job" experience. He confirmed that he knew "the differences between . . . all of [the iPhones]," and that he recognized both the iPhone 6s and iPhone 13 devices.[6]

_____

[6] An iPhone 13 and iPhone 6s differ in their dimensions, weight, screen size, and configuration. Compare iPhone 13 Pro Max - Technical Specifications, Apple Inc., https://support.apple.com/en-us/111870 [https://perma.cc/37J9-A9AP] (last visited July 7, 2026), with iPhone 6s - Technical

When pressed about his search of González's phone, Villanueva initially stated that he did not notice the model of the phone when he seized it because he "hand[ed] it over to the . . . forensic agents" and thus did not "have the opportunity to examine" it. In fact, he testified, he was "sure [the device] was an iPhone 6S" throughout his questioning of González. (Emphasis added.) According to his testimony, he only noticed "[l]ater on" -- indeed, "days later" -- that the device was an iPhone 13.

But Villanueva revised his account when confronted with the inventory form during cross-examination. For example, he conceded that he knew that he had seized an iPhone 13 on the day of the search, and that he could discern the device model just "by seeing it." He also acknowledged that he had not immediately handed the device to the forensics team but instead that he and Pacheco had held onto it throughout their 50-minute interaction with González.

Although Villanueva had previously stated that the "focus" of his investigation was the -7611 phone number, he admitted on cross-examination that he understood the search warrant to be device-specific. He testified:

Specifications, Apple Inc., https://support.apple.com/en-us/111952 [https://perma.cc/U8LD-YCYD] (last visited July 7, 2026).

- 8 -

Q: And what you wanted to search was a device, right?  Not a phone number.

A: The search warrant is for the device.

. . .

Q:  Is  it  your  understanding  that  just  by having  a  phone  number,  you  are  authorized  to search any device?

A: With just the phone number?  No.

. . .

Q: You need more information?

A: Correct.

. . .

Q: Would you . . . need a description of the device?

A:  Well,  if,  if,  if  it's  inside  the,  the description  of  what  the,  the  device  is,  you add  the  description.   Is  it  an  iPhone  6S; iPhone 13?

Q: Because the person who executed the warrant needs  to  know  what  is  the  physical description --

A: Correct.

Q: -- of what he is allowed to seize?

A: Yes.

Q: And in this case, you did not seize the device that was covered by the search warrant, right?

A: Right.

Villanueva also conceded that, despite knowing that the

search  warrant  was  limited  to  "the  device"  (that  is,  the

- 9 -

iPhone 6s), neither he nor Pacheco had told González "the model[,] . . . the type[,] . . . [or] anything else" about the cell phone covered by the search warrant. Nor did they mention to González the IMEI number listed in the warrant, even though Villanueva acknowledged that each device has a unique IMEI. Instead, the agents explained only that the warrant applied to an iPhone with his phone number.

The magistrate judge ultimately issued a report recommending the denial of the motion to suppress. He concluded that the agents may have exceeded the scope of the warrant and that González did not validly consent to the search of the iPhone 13. But he also determined that the good faith exception to the exclusionary rule applied to the agents' search of the iPhone 13. Relying on Villanueva's testimony that the investigation "focus[ed]" on the phone number, the magistrate judge determined that the agents reasonably believed that the warrant authorized their search of the iPhone 13 because its phone number matched the one listed in the warrant. The magistrate judge further explained that the agents could have reasonably deduced that González recently upgraded his iPhone and that he transferred his relevant data to the new device.

González promptly filed an objection to the magistrate judge's determination that the good faith exception applied, and the district court ruled in his favor. It held that the good faith

exception did not salvage the search. The court emphasized that, based on the undisputed factual record, Villanueva knew that he had seized a device different from the one specified in the warrant on the same day that he had seized the iPhone 13. It then noted that no exigency justified the agents' search of a device not covered by the warrant. And absent any exigency, the court concluded that the agents should have obtained a new warrant before searching the iPhone 13; failing to do so, it held, indicated a lack of objective good faith. Thus, the court granted González's motion to suppress.[7]

The government timely appealed.

## II. STANDARD OF REVIEW

"On review of a district court's order granting a motion to suppress, we apply a mixed standard, reviewing findings of fact . . . for clear error and conclusions of law de novo." United States v. Vick, 145 F.4th 191, 197 (1st Cir. 2025) (citation modified). As to the facts, we view them "in the light most favorable to the district court's ruling, but only to the extent they are not clearly erroneous." Id. (quoting United States v. Rivera, 988 F.3d 579, 581 (1st Cir. 2021)). And we may "uphold a suppression ruling on any ground made manifest in the record."

---

[7] The district court adopted the magistrate judge's determination that González did not validly consent to the search of the iPhone 13. The government does not challenge that ruling on appeal.

- 11 -

United States v. Sheehan, 70 F.4th 36, 43 (1st Cir. 2023). Whether the good faith exception to the exclusionary rule applies, however, is a legal question, so our review of that issue is de novo. See United States v. Woodbury, 511 F.3d 93, 96 (1st Cir. 2007).

### III. DISCUSSION

Helpfully, the government concedes for the purposes of this appeal that we may assume that the HSI agents exceeded the scope of the warrant, in violation of the Fourth Amendment, by searching the iPhone 13. Thus, "the sole question before us is whether the exclusionary rule requires . . . suppression." United States v. Medina, 125 F.4th 310, 316 (1st Cir. 2025) (quoting United States v. Wright, 777 F.3d 635, 638 (3d Cir. 2015)).

According to the government, the evidence obtained from the iPhone 13 is admissible under the good faith exception to the exclusionary rule. But on the facts before us, viewed in the light most favorable to the district court's ruling, we conclude that the government has not met its "heavy burden" of demonstrating that the HSI agents acted with objective good faith. United States v. Gonzalez, 113 F.4th 140, 149 (1st Cir. 2024) (quoting United States v. Wurie, 728 F.3d 1, 13 (1st Cir. 2013)); see Vick, 145 F.4th at 197.

### A. Legal Standard

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures." U.S. Const. amend. IV. It also instructs that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Id.

Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment generally may not be admitted to prove guilt. See Herring v. United States, 555 U.S. 135, 139 (2009). But given the rule's "substantial social costs," exclusion is improper when the officers who conducted the search "acted in objective good faith or their transgressions [were] minor." Medina, 125 F.4th at 315 (first quoting United States v. Levin, 874 F.3d 316, 322 (1st Cir. 2017); and then quoting United States v. Leon, 468 U.S. 897, 908 (1984)). This "good faith exception" derives from the basic purpose of the exclusionary rule: "to deter deliberate, reckless, or grossly negligent conduct." Herring, 555 U.S. at 144. Importantly, however, even "unintentional mistakes may still preclude the application of the good faith exception" if exclusion can appreciably discourage the police conduct at issue. Medina, 125 F.4th at 316; see Herring, 555 U.S. at 141.

Determining whether the good faith exception applies does not depend on "a bright-line test." United States v. Pimentel, 26 F.4th 86, 92 (1st Cir. 2022). When (as here) the Fourth Amendment violation centers on the improper execution of a

warrant, our inquiry turns on whether it was nonetheless objectively reasonable for the officers "to believe [that their actions] were covered by the warrant," given their "knowledge and experience." Id. at 91-92 (quoting Leon, 468 U.S. at 918 n.19); Herring, 555 U.S. at 145. In conducting this analysis, we consider "the language of the warrant" and all "attendant circumstances at the time of the warrant application and its execution." Pimentel, 26 F.4th at 92; Gonzalez, 113 F.4th at 149 (quoting United States v. Brunette, 256 F.3d 14, 17 (1st Cir. 2001)). The government bears a "heavy burden" to demonstrate that the good faith exception applies. Gonzalez, 113 F.4th at 149 (quoting Wurie, 728 F.3d at 13).

The government contends that the district court legally erred by focusing its good faith analysis on the lack of exigency. We agree that the government should not be foreclosed from invoking the good faith exception here simply because the agents may have had time to obtain a new warrant. Instead, exigency (or lack thereof) is relevant to the good faith inquiry only insofar as it bears on the reasonableness of an officer's understanding at the time of the warrant's "execution." Gonzalez, 113 F.4th at 149 (quoting Brunette, 256 F.3d at 17); see Herring, 555 U.S. at 145 (clarifying that the "good-faith inquiry is confined to . . . whether a reasonably well trained officer would have known that the search was illegal in light of all of the

- 14 -

circumstances" (citation modified)).  Thus, our analysis focuses on the HSI agents' reasonable belief about what the warrant authorized, "in light of 'all of the circumstances,'" when they seized and searched the iPhone 13.  Herring, 555 U.S. at 145 (quoting Leon, 468 U.S. at 922 n.23).

## B. Analysis

As the government sees it, the good faith exception applies because the agents had a warrant to search an iPhone with a certain phone number that belonged to González, and they proceeded to search an iPhone with that phone number, which González admitted belonged to him.  According to the government, the fact that the device that the agents seized was a different iPhone model does not negate the existence of good faith.  In support of its position, the government points to our cases upholding searches of residences even when the warrants specified different apartment numbers or addresses.

Although we appreciate the force of the government's argument, we cannot agree that it has met its burden to justify the application of the good faith exception based on the record here.  Specifically, we find objective good faith lacking because (1) the warrant unambiguously described the iPhone 6s as the device to be searched and (2) the agents realized immediately that they had seized a different model iPhone but made no effort to

- 15 -

resolve the discrepancy between the device they seized and the device listed in the warrant.

### 1. The Warrant

We begin with "the language of the warrant." Pimentel, 26 F.4th at 92. As González points out, the warrant clearly identified the iPhone 6s as "the DEVICE" to be searched. It defined the subject of the search as an "Apple iPhone 6S 64GB" and specified the device's unique -1711 IMEI number. The warrant also repeatedly referenced that iPhone 6s device, thus limiting the search of any digital files to those found on that device. And Villanueva expressly stated in his affidavit supporting the warrant application that he had probable cause to believe that evidence of child pornography was "contained within the Apple iPhone 6S." On that basis, he requested a "search warrant for the Apple iPhone 6S 64GB cellular phone." Thus, a plain reading of the warrant indicates that it was tailored specifically to the iPhone 6s.

The government argues that González overemphasizes the importance of the physical "DEVICE" listed in the warrant. What matters, in its view, is that the warrant identified the -7611 phone number, which was connected to the iPhone 13. Because the investigation "focus[ed]" on the phone number, not the device itself, the government maintains that the agents reasonably understood the warrant to cover the iPhone 13.

But the warrant and underlying application suggest that the physical device was very much the focus of the warrant. For example, in his affidavit, Villanueva explained that the search for incriminating evidence would involve examining the device's physical hardware. He further observed that a cell phone enables a user to "download[]" and "store[]" material from the internet on the phone's "hard drive," making it "an ideal repository for child pornography." Accordingly, the warrant permitted the agents to search for evidence "that may be stored or found within the [iPhone 6s], or on any memory storage device that might be located within the cell phone." Thus, as Villanueva acknowledged at the suppression hearing, the "search warrant [wa]s for the device," because he suspected that evidence would be stored in the iPhone 6s's hardware.

Further, Villanueva did not seek -- and the warrant did not authorize -- the search of any device associated with the -7611 phone number. Rather, the warrant expressly approved a search of "the DEVICE," defined as the iPhone 6s, and any relevant files stored on it. And Villanueva conceded that he understood as much, casting serious doubt on the government's claim that he acted in objective good faith by searching the iPhone 13, at least without further inquiry about the status of the iPhone 6s. See Herring, 555 U.S. at 145 (noting that courts may consider "a particular

officer's knowledge and experience" when conducting a good faith analysis).

Indeed, the government admitted at oral argument that the good faith exception would not apply if the agents had proceeded to search any Apple device associated with the same phone number -- such as an iPad -- that they found in González's possession when they detained him. Yet some iPad tablet products are similar in size and functionality to the iPhone 13.[8] And in an age when an individual may have multiple iPhones, physical-device details supply critical information in circumscribing a warrant's scope. Cf. United States v. Underwood, 129 F.4th 912, 936 (6th Cir. 2025) (upholding a search warrant for an iPhone in part because the warrant "provided [the] correct physical details of that phone" and thus left "no reasonable probability [that the] officers would search the wrong phone"). For that reason and on the record before us, we are not convinced by the government's contention that the iPhone's "model number and

---

[8] For example, the iPad mini has dimensions comparable to those of the iPhone 13. Compare iPad mini - Technical Specifications, Apple Inc., https://www.apple.com/ipad-mini/specs/ [https://perma.cc/9YTR-NM8X] (last visited July 7, 2026), with iPhone 13 Pro Max - Technical Specifications, Apple Inc., https://support.apple.com/en-us/111870 [https://perma.cc/37J9-A9AP] (last visited July 7, 2026).

IMEI number were . . . nonessential physical descriptors" in interpreting the warrant.[9]

As the Supreme Court stated more than a decade ago, smartphones (like the iPhone) are "minicomputers," and a search of a smartphone may be more intrusive than a search of one's home. Riley v. California, 573 U.S. 373, 393-97 (2014) (describing the significant privacy concerns raised by searches of modern cell phones). Thus, we must proceed with caution in upholding searches of iPhones that are not explicitly authorized by a warrant (or by some other well-established exception to the warrant requirement). See id. at 401-03.

Given the facts here, we also cannot accept the government's analogy to our decision in Pimentel. In that case, we applied the good faith exception to uphold a search of the defendant's third-floor residence, even though the warrant contained a reference to the second floor. See Pimentel, 26 F.4th at 92-93. We observed that the warrant there "directed the officers toward the apartment 'which is occupied by' [the

---

[9] Relatedly, the government argues that the warrant was ambiguous in identifying the correct device. It maintains that the warrant was "not tailored to searching an iPhone 6S" because it "authorized officers to use the 'facial recognition feature' to unlock the device," even though the iPhone 6s does not have facial-recognition capabilities. The government did not, however, advance this argument to the district court and did not press for plain error review on appeal. Thus, this argument is waived. See United States v. Colón-De Jesús, 85 F.4th 15, 25 (1st Cir. 2023).

defendant]" -- a phrasing that we described as "not an exemplar of grammatical precision." Id. at 93-94. We then concluded that "no reading of [that warrant] [wa]s free from ambiguity." Id. at 93. Given the imprecise description, we held that the warrant could reasonably be read to authorize the search of the defendant's "residence within the building," irrespective of the floor on which it was located. Id.

Unlike in Pimentel, the search warrant in this case was unambiguous. Although the warrant described the iPhone 6s as having a -7611 phone number and belonging to González, it expressly defined the iPhone 6s and its unique IMEI number as "the DEVICE" to be searched. This fact cuts against the conclusion that it was objectively reasonable for the agents to search a different device.[10]

---

[10] For similar reasons, we also reject the government's analogy to our decision in United States v. Moss, 936 F.3d 52 (1st Cir. 2019). That case concerned the search of a package pursuant to a warrant that accurately listed the package's "exclusive tracking number" but, due to a clerical error, a description of a different package was attached to the warrant. Id. at 60. We concluded that between the correct listing of the "unique" tracking number and the executing officer's extensive "familiarity with the [correct] package's physical characteristics," the warrant satisfied the Fourth Amendment's particularity requirement. Id. at 60-61.

Moss did not involve the good faith exception and thus has limited relevance to the issues before us. But to the extent the government suggests that Moss should inform our reasonableness analysis, we think it cuts in favor of suppression. As in Moss, the warrant here contained a unique identification number (the IMEI) for the property to be searched. But unlike in Moss, the

## 2. The Agents' Failure to Inquire About the iPhone 6s

Turning to the agents' questioning of González, the government argues that their interaction with him engendered an objectively reasonable belief that the warrant covered the iPhone 13.  In particular, the government highlights González's cooperation during the interview, in which he acknowledged that the iPhone 13 belonged to him and bore the -7611 phone number.  The government also notes that the agents provided González with a copy of the warrant for his review, and he raised no issues with it.  And finally, the government contends that based on González's conduct during the interview, the agents made a series of reasonable inferences to conclude that they were authorized to search the iPhone 13.

But viewing the record in the light most favorable to the suppression ruling, we conclude that multiple aspects of the agents' interaction with González indicate a lack of objective good faith.  See Vick, 145 F.4th at 197.  First, the agents knew (or should have known) as soon as they seized the phone from González that it was different from the one identified in the

---

HSI agents seized a device with a different IMEI.  Further, in Moss, we excused the erroneous physical description attached to the warrant because the executing officer had substantial familiarity with the correct package to be searched.  See id. Here, the HSI agents also knew the difference between the two iPhone models but nevertheless proceeded to search the wrong device (that is, they knowingly searched the wrong "package").  Id. at 61.

warrant.  Indeed, Villanueva conceded at the suppression hearing that he knew -- just "by seeing it" -- that the seized device was not the iPhone 6s described in the warrant.  And he confirmed that understanding in writing on the day of the search when he documented the iPhone 13 in the inventory form.

Second, when the agents described the warrant aloud to González after seizing his phone, they skipped over the words in the warrant making clear that it authorized a search of an iPhone 6s with a specific IMEI number.  Instead, the agents described the property to be searched simply as an "iPhone" that was associated with the -7611 phone number.  Even if the agents did not deliberately skip over that critical information when explaining the warrant's scope, "unintentional mistakes may still preclude the application of the good faith exception" when exclusion would serve to deter police misconduct going forward. Medina, 125 F.4th at 316; see also Herring, 555 U.S. at 144 (noting that the exclusionary rule serves to deter "reckless[] or grossly negligent conduct").  And the fact that the agents provided González with a copy of the warrant does not cure their omission: The warrant was written in English, and the agents never confirmed that González could read or understand English.  In fact, they conducted the entire interview in Spanish and took care to hand González a Miranda form written in Spanish.

Third, the agents failed to ask any clarifying questions of González to resolve the discrepancy between the device listed in the warrant and the device in his possession. In the government's view, the agents "natural[ly] infer[red]" that González had upgraded his phone, transferred all the data from the iPhone 6s to the iPhone 13, and discarded the iPhone 6s -- and that T-Mobile's records were simply outdated. According to the government, González implicitly confirmed the agents' inferences when, later in the interview, he asked whether he would still have a phone after the agents left. But González raised this question over 25 minutes into the interview, at which point the agents had already seized and unlocked the iPhone 13 and rifled through its contents multiple times. And even if the agents reasonably surmised that González exclusively used the iPhone 13 to conduct his day-to-day affairs, he still could have possessed the iPhone 6s. Yet the agents did not mention the iPhone 6s once during the 50-minute interview, let alone test the other inferences necessary to conclude that they were authorized to search the iPhone 13.

For this reason, we reject the government's argument that the agents' "on-the-scene discoveries" made their understanding of the warrant's coverage reasonable, just like in Pimentel. 26 F.4th at 93. In that case, during "their initial sweep of the premises," the officers discovered that the defendant

and his family -- all of whom were identified in the warrant -- lived on the third floor of the apartment building, not the second.  Id.  They also learned that the guns subject to the search were in the defendant's bedroom, and that his bedroom was on the third floor.  See id.  Only after verifying those facts did the officers conduct the search.  See id.  Conversely, the agents here did not take any steps to clarify the discrepancies between the warrant's description of "the DEVICE" and their "on-the-scene discoveries" before they searched the iPhone 13.  Id.

Given the combination of the agents' knowledge that they had seized the wrong device, their omission of critical text in describing the warrant's scope to González, and their failure to ask González if he still possessed the iPhone 6s, we conclude that the government has not met its burden of establishing objective good faith.  Once the agents knew that they had seized a different electronic device, they had a simple next step available to them: asking González if he still owned the iPhone 6s or if he had upgraded his old phone to the iPhone 13.  But the agents failed to put forth the "reasonable effort to ascertain and identify the [device] intended to be searched."  Id. at 94 (quoting Maryland v. Garrison, 480 U.S. 79, 88 (1987)).  Indeed, they did not ask any of the clarifying questions that a "reasonably well trained officer" with Villanueva's "knowledge and experience" would be expected to pose in this context.  Herring, 555 U.S. at 145; cf.

- 24 -

United States v. Giambro, 126 F.4th 46, 57 (1st Cir. 2025) (conducting reasonableness analysis in the context of the emergency aid exception to the warrant requirement and noting that "officers may not ignore obvious and available options for gathering facts to determine if an emergency actually exists" before entering a home without a warrant).

In short, the agents here simply proceeded to search a different electronic device from the one specified in the warrant. Thus, they did not "refrain[] from searching the wrong" device. Woodbury, 511 F.3d at 99-100 (applying the good faith exception when the police declined to search the wrong apartment after they "were told by the occupant that [the defendant] did not live there"). Exclusion is warranted to deter such conduct in the future. Cf. United States v. Lickers, 928 F.3d 609, 620 (7th Cir. 2019) ("At its core, Leon is about encouraging responsible and diligent police work.").

## IV. CONCLUSION

For all these reasons, we **affirm** the district court's order granting González's motion to suppress.